IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TIGA BRYANT, individually and<br>d/b/a DENSON'S FAST TAX SERVICE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 2:17-cv-1094 |

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

Plaintiff, United States, for its complaint against Tiga Bryant, individually and doing business as Denson's Fast Tax Service, alleges the following:

**Jurisdiction and Venue**

1. This suit is brought under 26 U.S.C. §§ 7402, 7407 and 7408 to enjoin Tiga Bryant ("Bryant"), individually and doing business as Denson's Fast Tax Service, and anyone in active concert or participation with her, from:

(a) acting as a federal tax return preparer or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than herself;

(b) preparing or assisting in preparing federal tax returns that she knows, or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

(c) owning, operating, managing, working for, profiting from, volunteering for, or controlling a tax return preparation business;

(d) engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code;

(e) appearing as a representative on behalf of any person or entity before the IRS;

(f) seeking permission or authorization (or helping or soliciting others to seek permission or authorization) to file tax returns with an IRS Preparer Tax Identification Number ("PTIN") and/or IRS Electronic Filing Identification Number ("EFIN"), or any other IRS service or program by which one prepares or files tax returns; and

(g) using, maintaining, renewing, obtaining, transferring, selling, or assigning any PTIN(s) and EFIN(s).

2. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

3. Venue is appropriate in this Court under 28 U.S.C. §§ 1391 and 1396 because Bryant resides in New Orleans, Louisiana, and a substantial part of the actions giving rise to this suit took place in this judicial district.

4. This action has been commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407 and 7408.

**Overview of Defendant's Activities**

5. Tiga Bryant resides in this judicial district. Bryant is a tax return preparer, as defined by 26 U.S.C. § 7701(a)(36); she prepares tax returns for compensation. She sometimes conducts business using the name "Denson's Fast Tax Service," a sole proprietorship tax return preparation business, operating at various locations in the greater New Orleans area. Bryant has prepared federal tax returns and operated Denson's Fast Tax Service for compensation since at least 2009.

6. Since 2009, Bryant has prepared at least 2,046 federal tax returns.

**Failure to Comply with Earned Income Tax Credit Due Diligence Requirements**

7. The EITC is a refundable tax credit available to certain low to moderate income working individuals and families. The requirements for claiming the EITC are set forth in 26 U.S.C. § 32.

8. Because the EITC is a refundable credit, claiming an EITC can reduce a taxpayer's federal tax liability below zero, generating a refund to the taxpayer from the United States Treasury.

9. The amount of the EITC depends on the taxpayer's earned income, filing status, and number of dependents for which the taxpayer is responsible.

10. Congress recognized a potential for abuse in claiming the EITC and authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers. See 26 U.S.C. § 6695(g). These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC. The tax return preparer may not "ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete." See 26 C.F.R. § 1.6695-2 (2010). Tax return preparers must also document their compliance with these requirements and keep that documentation for three years. Id.

11. To document compliance with the due diligence requirements, tax return preparers must complete either the "Paid Preparer's Earned Income Credit Checklist" (Form 8867) or record and maintain other documentation verifying customer eligibility for the EITC. See Treas. Reg. §1.6695-2(b).

12. Bryant prepared 320 tax returns for the 2009 tax year. Of the 320 tax returns Bryant prepared for the 2009 tax year, the IRS reviewed 167 of the returns that claimed the EITC.

Bryant failed to satisfy the due diligence requirements on 132 of those tax returns by failing to even request from customers, much less record and maintain, documentation to verify the customers' eligibility for the EITC (i.e. proof of dependents, self-employment income and/or expenses reported on Schedule C, Profit or Loss From Business (hereinafter "Schedule C"), and head-of-household filing status).

13. Examples of Bryant's failure to comply with the due diligence requirements include:

- files containing no documentation verifying the customers' eligibility for a particular filing status;
- files containing no documents showing that the children claimed on the return met the "qualifying child" requirements, i.e. that the child has a familial relationship with the customer, that the child lived with the customer, and that if the child was 19 or older was either a full-time student or permanently and totally disabled; and
- files containing no documentation showing business income or expenses claimed on Schedules C; and Schedule C businesses listing no expenses, but conveniently claiming the amount of gross receipts necessary to maximize the customers' EITC.

14. Because Bryant failed to follow the due diligence requirements, she had inadequate documentation to determine whether or not business income or expenses she reported on returns to support the EITC actually existed or were correctly reported, or whether the dependents claimed on the return were qualifying dependents for purposes of the EITC.

15. Based on the results of the IRS' due diligence examination, on February 11, 2011, Bryant agreed to a penalty assessment under 26 U.S.C. § 6695(g) of $13,200 for the 2009 tax year.

**Defendant's Continued Non-Compliance with the Federal Tax Laws Since the Due Diligence Exam**

16. Bryant fully paid the § 6695(g) penalty. She nevertheless continued to engage in conduct that is subject to penalty under 26 U.S.C. §§ 6694 and 6695. Specifically, Bryant improperly claims bogus unreimbursed employee business expenses, and the fuel tax credit on some of her customer's tax returns. Bryant's conduct deprives the United States Treasury of revenue to which it is legally entitled and causes her customers to owe the resulting tax deficiencies, plus applicable penalties and interest when the returns Bryant prepared are examined by the IRS.

17. The table below shows the number of federal income tax returns prepared by Bryant for tax years 2008-2015 and the number of those returns claiming a refund:

| **Tax Year** | **Number of Returns** | **Number of Refund Returns** | **Percentage of Refund Returns** |
|---|---|---|---|
| 2008 | 407 | 407 | 100% |
| 2009 | 320 | 315 | 98% |
| 2010 | 352 | 349 | 99% |
| 2011 | 164 | 164 | 100% |
| 2012 | 188 | 187 | 99% |
| 2013 | 238 | 238 | 100% |
| 2014 | 229 | 228 | 99% |
| 2015 | 148 | 148 | 100% |

18. Since the 2009 due diligence exam, the IRS examined some of the individual tax returns Bryant prepared. IRS exams demonstrated that many of the tax returns Bryant prepared required adjustments because Bryant improperly claimed various tax credits and deductions.

19. For example, the IRS examined 54 of the 655 returns that Bryant prepared for the 2012, 2013, and 2014 tax years. Of the 54 returns examined, the IRS adjusted the EITC on 50 returns. The IRS adjusted the additional child tax credits on 23 of the 54 returns.

**Overview of 26 U.S.C. § 6421: Credit for Federal Tax Paid on Fuels**

20. In 2015, Bryant began filing tax returns that claim a fuel tax credit for the "off highway business use" of nontaxable gasoline. This credit is generally claimed on Form 4136, Credit for Federal Tax Paid on Fuels (hereinafter, "Form 4136") which Bryant includes with the customer's Form 1040 income tax return that she files with the IRS.

21. Internal Revenue Code section 6421(a) provides a tax credit for fuel used in an off-highway business use. Off-highway business use is any off-highway use of fuel in a trade or business or in an income-producing activity where the equipment or vehicle is not registered and not required to be registered for use on public highways. IRS Publication 225 provides the following examples of off-highway business fuel use: (1) in stationary machines such as generators, compressors, power saws, and similar equipment; (2) for cleaning purposes; and (3) in forklift trucks, bulldozers, and earthmovers.

22. IRS Publication 510 defines a highway vehicle as any "self-propelled vehicle designed to carry a load over public highways, whether or not it is also designed to perform other functions." A public highway includes any road in the United States that is not a private roadway. This includes federal, state, county, and city roads and streets. These highway vehicles are not eligible for the fuel tax credit. IRS Publication 510 provides the following as examples of highway vehicles which are not eligible for the fuel tax credit: passenger automobiles, motorcycles, buses, and highway-type trucks and truck tractors.

23. In short, the fuel tax credit does not apply to passenger cars or other vehicles that are registered or required to be registered to drive on public highways.

24. Fraudulent Fuel Tax Credits were on the IRS' "Dirty Dozen" List of Tax Scams for the 2016 filing season.

25. Of the 229 tax returns that Bryant prepared and filed in 2015, at least 25 returns claimed fuel tax credits. None of the 25 customer tax returns list occupations that would even suggest they had any reason to use gasoline in a manner that would make them eligible to claim a fuel tax credit. And, as alleged below in paragraphs 30 - 82, at least 8 customers did not use gasoline in any manner that would qualify them for the fuel tax credit.

26. The fuel tax credit Bryant claims on each customer's return varies from $220-$900 per return.

**Fabricated Itemized Deductions**

27. Bryant also prepares tax returns for customers which include Schedule A, Itemized Deductions (hereinafter "Schedule A") on which she makes false claims for purported unreimbursed employee business expenses.

28. Section 162 of the Internal Revenue Code governs trade or business expenses. Bryant often claims deductions for fabricated, fraudulently inflated, and/or non-qualifying business expenses, particularly unreimbursed employee expenses. A tax return preparer may rely on information provided by a taxpayer, but the preparer "may not ignore the implications of information furnished to the tax return preparer or actually known by the tax return preparer [and] the preparer must make reasonable inquiries if the information as furnished appears to be incorrect or incomplete" or if the provision of the Code requires inquiries to determine the existence of specific facts. Treas. Reg. § 1.6694-1(e)(1). IRS Publication 529 (which is a guide

for preparing Schedule A and is readily available and easy to understand) provides examples of qualifying business expenses, including “Union dues and expenses” and “Work clothes and uniforms if required and not suitable for everyday use.” Publication 529 also provides examples of expenses that do not qualify as business expenses, including “Commuting expenses,” “Lunches with co-workers,” “Meals while working late,” and “Personal, living, or family expenses.”

29. As alleged below, several of Bryant’s customers’ returns claimed unreimbursed employee business expenses that total 31% to 49% of the total income they received from employment, suggesting that their claimed unreimbursed business expenses took up nearly half of the total amount they were compensated (Customers 1, 2, and 3). One customer’s claimed expenses were more than total employment income the customer received in 2014, meaning that Bryant claimed that the customer received no net compensation for services they performed and was left with no income to meet their living expenses (Customer 8). These claims are patently false.

**Examples of False Returns Bryant Prepared**

Customer 1

30. In 2014, Customer 1 was an employee at a recycling company, who earned $40,317 in wages in 2014.

31. Customer 1 paid Bryant approximately $339 to prepare his 2014 federal income tax return.

32. As an employee, Customer 1 incurred unreimbursed employee business expenses in 2014 for boots, uniforms, safety glasses, hard hats and other safety related equipment. Customer 1 estimates that at most, these items cost him $2,000-$3,000.

33. Bryant claimed $12,325 in unreimbursed employee business expenses on Schedule A of Customer 1's federal income tax return.

34. Customer 1 did not give Bryant any receipts or other reason to believe that he had actually incurred $12,325 in unreimbursed employee business expenses in 2014.

35. Bryant also claimed a $458 fuel tax credit on Customer 1's federal income tax return. The fuel tax credit was claimed on Form 4136, which was filed with Customer 1's tax return and represented that Customer 1 had used 2500 gallons of gasoline in a "off-highway business use" to compute the claimed credit.

36. Customer 1 did not use 2500 gallons of gasoline in 2014 in any qualifying "off-highway business use," nor did he provide Bryant with any reason to believe that he did.

Customer 2

37. In 2014, Customer 2 worked in shipping and receiving as an employee at a company and earned $21,635 in wages.

38. Customer 2 paid Bryant at least $100 to prepare his 2014 federal income tax return.

39. Customer 2's employer does not generally require him to incur any out-of-pocket expenses and reimburses him for any expenses he does incur.

40. Bryant claimed $10,365 in unreimbursed employee business expenses on Schedule A of Customer 2's federal income tax return.

41. Customer 2 did not give Bryant any receipts or other reason to believe that he had actually incurred $10,365 in unreimbursed employee business expenses in 2014.

42. Bryant also claimed a $293 fuel tax credit on Customer 2's federal income tax return. The fuel tax credit was claimed on Form 4136, which was filed with Customer 2's tax return and

represented that Customer 2 had used 1600 gallons of gasoline in a "off-highway business use" to compute the claimed credit.

43. Customer 2 did not use 1600 gallons of gasoline in 2014 in any qualifying "off-highway business use," nor did he provide Bryant with any reason to believe that he did.

Customer 3

44. In 2014, Customer 3 worked as a line cook at a restaurant and earned $25,756 in wages.

45. According to the Preparer Tax Identification Number (PTIN) reported on Customer 3's return, Bryant prepared Customer 3's 2014 federal income tax return.

46. Customer 3 did not incur any unreimbursed employee business expenses in 2014.

47. Bryant claimed $10,500 in unreimbursed employee business expenses on Schedule A of Customer 3's federal income tax return.

48. Customer 3 did not give Bryant any receipts or other reason to believe that he had actually incurred $10,500 in unreimbursed employee business expenses in 2014.

49. Bryant also claimed a $458 fuel tax credit on Customer 3's federal income tax return. The fuel tax credit was claimed on Form 4136, which was filed with Customer 3's tax return and represented that Customer 3 had used 2500 gallons of gasoline in a "off-highway business use" to compute the claimed credit.

50. Customer 3 did not use 2500 gallons of gasoline in 2014 in any qualifying "off-highway business use," nor did he provide Bryant with any reason to believe that he did.

51. Bryant did not give Customer 3 the opportunity to review Customer 3's tax return before Bryant filed the tax return with the IRS.

Customer 4

52. In 2014, Customer 4 worked as an employee and received a W-2 from her employer.

53. Customer 4 paid Bryant $350 to prepare her 2014 federal income tax return.

54. Bryant claimed a $458 fuel tax credit on Customer 4's federal income tax return. The fuel tax credit was claimed on Form 4136, which was filed with Customer 4's tax return and represented that Customer 4 had used 2500 gallons of gasoline in "off-highway business use" to compute the claimed credit.

55. Customer 4 did not use 2500 gallons of gasoline in 2014 in any qualifying "off-highway business use," nor did she provide Bryant with any reason to believe that she did. Customer 4 did not even own a vehicle in 2014.

Customer 5

56. In 2014, Customer 5 was employed as a laundry supervisor at a hotel and earned $22,523 in wages. This was Customer 5's only income-producing activity in 2014.

57. Customer 5 paid Bryant approximately $300 to prepare her 2014 federal income tax return.

58. Bryant claimed a $220 fuel tax credit on Customer 5's federal income tax return. The fuel tax credit was claimed on Form 4136, which was filed with Customer 5's tax return and represented that Customer 5 had used 1200 gallons of gasoline in "off-highway business use" to compute the claimed credit.

59. Customer 5 only used her vehicle for commuting, errands, and other personal business in 2014.

60. Customer 5 did not use 1200 gallons of gasoline in 2014 in any qualifying "off-highway business use," nor did she provide Bryant with any reason to believe that she did.

Customer 6

61. In 2014, Customer 6 was employed as a pharmacy technician and earned $29,321 in wages. This was Customer 6's only income-producing activity in 2014.

62. Customer 6 paid Bryant to prepare her 2014 federal income tax return.

63. Bryant claimed a $458 fuel tax credit on Customer 6's federal income tax return. The fuel tax credit was claimed on Form 4136, which was filed with Customer 6's tax return and represented that Customer 6 had used 2500 gallons of gasoline in "off-highway business use" to compute the claimed credit.

64. Customer 6 only used her vehicle for driving between home, work, school, and child responsibilities.

65. Customer 6 did not use 2500 gallons of gasoline in 2014 in any qualifying "off-highway business use."

Customer 7

66. In 2014, Customer 7 was employed as an assistant manager at a grocery store and as a pizza delivery driver. These activities were Customer 7's only income-producing activities in 2014. Customer 7 earned $26,356 in wages in 2014.

67. Customer 7 paid Bryant approximately $150 to prepare his 2014 federal income tax return.

68. Bryant claimed a $641 fuel tax credit on Customer 7's federal income tax return. The fuel tax credit was claimed on Form 4136, which was filed with Customer 7's tax return and represented that Customer 7 had used 3500 gallons of gasoline in "off-highway business use" to compute the claimed credit.

69. Customer 7 did not use 3500 gallons of gasoline in 2014 in any qualifying "off-highway business use," nor did he provide Bryant with any reason to believe that he did.

70. Bryant did not give Customer 7 the opportunity to review Customer 7's tax return before Bryant filed the tax return with the IRS.

<u>Customer 8</u>

71. In 2014, Customer 8 was employed at a restaurant and earned $15,429 in wages. This was Customer 8's only income-producing activity in 2014.

72. Customer 8 paid Bryant to prepare his 2014 federal income tax return.

73. Customer 8 is sometimes required to incur expenses as a restaurant employee, for example to purchase supplies, but he is eligible to be reimbursed for the expenses he incurs. Sometimes he chooses not to seek reimbursement.

74. Bryant claimed $15,635 in unreimbursed employee business expenses on Schedule A of Customer 8's federal income tax return. Customer 8 did not incur this amount in unreimbursed employee business expenses, nor did he give Bryant any reason to believe that he did.

75. The amount Bryant claimed on Customer 8's Schedule A is particularly implausible because it exceeds his income as an employee by $206. If the amount claimed on Customer 8's return was correct, his net income for the year would have been negative, leaving him with no funds to meet his living expenses.

76. Bryant claimed a $641 fuel tax credit on Customer 8's federal income tax return. The fuel tax credit was claimed on Form 4136, which was filed with Customer 8's tax return and represented that Customer 8 had used 3500 gallons of gasoline in "off-highway business use" to compute the claimed credit.

77. Customer 8 did not use 3500 gallons of gasoline in 2014 in any qualifying "off-highway business use," nor did he provide Bryant with any reason to believe that he did.

Customer 9

78. In 2014, Customer 9 was employed as a janitor and had a summer job with the city of New Orleans. Customer 9 earned a total of $9,447 in wages in 2014.

79. Customer 9 paid Bryant approximately $250 to prepare her 2014 federal income tax return.

80. Bryant claimed a $458 fuel tax credit on Customer 9's federal income tax return. The fuel tax credit was claimed on Form 4136, which was filed with Customer 9's tax return and represented that Customer 9 had used 2500 gallons of gasoline in "off-highway business use" to compute the claimed credit.

81. Customer 9 did not use 2500 gallons of gasoline in 2014 in any qualifying "off-highway business use," nor did she provide Bryant with any reason to believe that she did.

82. Bryant did not give Customer 9 the opportunity to review Customer 9's tax return before Bryant filed the tax return with the IRS.

**Harm Caused by Bryant**

83. Bryant's misconduct is longstanding. Since 2009, Bryant has prepared over 2000 tax returns on behalf of her customers. Bryant's conduct has continued unabated despite the IRS' due diligence investigation of her, the assessment of § 6695(g) penalties, and examinations of her customers.

84. Bryant's improper conduct recently expanded to include falsely claiming the fuel tax credit. Bryant began the fuel tax credit scheme with full knowledge that she was already under IRS scrutiny following the 2009 due diligence examination. Bryant's conduct demonstrates that

she will continue to cause harm to the United States Treasury unless she is enjoined by this Court.

85. Since at least 2009, Bryant's customers have been harmed because they paid her fees and relied on her to prepare their tax returns correctly and in accordance with the Internal Revenue Code. Instead, Bryant prepared returns that substantially understated their correct tax liabilities and claimed tax credits to which they were not entitled. As a result, many of Bryant's customers now face income tax deficiencies and may be liable for sizeable penalties and interest.

86. Bryant's conduct harms the United States because her customers are under-reporting their correct tax liabilities, claiming credits to which they are not legally entitled and, in many cases, receiving unwarranted refunds, thereby diminishing tax revenues.

87. In addition to the direct harm caused by preparing tax returns that understate customers' tax liabilities, Bryant's activities undermine public confidence in the administration of the federal tax system and encourage noncompliance with tax laws.

88. The IRS has examined 197 of the 2,046 returns Bryant prepared for the 2008, 2009, 2010, 2011, 2012, 2013, and 2014 tax years. Of the 197 examinations, 189 resulted in assessed deficiencies. Based on the tax deficiencies determined in these examinations, the United States Treasury lost $808,111 in revenue based on false claims and deductions in tax returns Bryant prepared.

89. Bryant further harms the United States because the IRS must devote its limited resources to investigating Bryant, identifying her customers, ascertaining her customers' correct tax liabilities, recovering any refunds erroneously issued, and collecting any additional taxes and penalties.

## COUNT ONE
## Injunction under 26 U.S.C. § 7407

90. The United States incorporates by reference the allegations in paragraphs 1 through 89.

91. Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695 or engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws, if the court finds that the preparer has engaged in such conduct and that injunctive relief is appropriate to prevent the recurrence of the conduct. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct and that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a federal tax preparer.

92. Bryant has engaged in conduct subject to penalty under 26 U.S.C. § 6694(a) by preparing federal income tax returns that understate her customers' liabilities based on unrealistic, frivolous, and reckless positions, including but not limited to claiming unsubstantiated expenses in an amount to which her customers are not entitled, and fraudulent fuel tax credits.

93. The Treasury regulations promulgated under 26 U.S.C. § 6695(g) prohibit a return preparer from claiming the EITC, among other provisions, without first conducting proper due diligence and documenting his or her compliance with the due diligence requirements. See 26 C.F.R. § 1.6995-2 (2016).

94. Bryant failed to comply with the due diligence requirements for the EITC.

95. In 2011, the IRS assessed $13,200 in penalties against Bryant for conduct subject to penalty under 26 U.S.C. § 6695(g). After she was assessed penalties for lack of EITC due

diligence, Bryant used other schemes to improperly understate her customer's tax liabilities. The fact that Bryant has already been subject to a penalty for her EITC conduct and then moved on to other schemes, such as claiming fuel tax credits and false employee business expenses, demonstrates that Bryant is unwilling or unable to comply with the law in preparing income tax returns.

96. Bryant has also continually and repeatedly violated 26 U.S.C. § 6695(a), by failing to provide customers, including Customers 3, 7, and 9, with copies of their tax returns before the returns were filed with the IRS.

97. Bryant's foray into claiming fraudulent fuel tax credits demonstrates that her pattern of non-compliance will continue if she is not enjoined.

98. Bryant has been preparing tax returns since at least 2009. The fact that her pattern of non-compliance continued after the IRS assessed a penalty in 2011, and continues to become even bolder, demonstrate that if she is not enjoined by the Court, Bryant will continue to prepare and file false and fraudulent tax returns.

99. Bryant's continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A) and (D), and thus are subject to an injunction under 26 U.S.C. § 7407. Bryant's failure to comply with the due diligence requirements for the EITC, her falsifying of expenses and deductions for her customers, her false fuel tax credit claims and her failure to provide customers with copies of their returns, demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Bryant's interference with the proper administration of the internal revenue laws. Thus, she should be permanently barred from acting as a federal tax return preparer.

**COUNT TWO**
**Injunction under 26 U.S.C. § 7408**

100. The United States incorporates by reference the allegations in paragraphs 1 through 99.

101. Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under either 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

102. Section 6701(a) of the Internal Revenue Code penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability.

103. Bryant prepares federal income tax returns for customers that she knows will understate the customers' correct tax liabilities, because Bryant has prepared tax returns that improperly calculated the EITC for her customers, she claims unreimbursed employee business expenses and fuel tax credits that have no basis in fact or law.

104. Accordingly, Bryant's conduct in connection with her preparation and filing of false tax returns is subject to a penalty under 26 U.S.C. § 6701.

105. Bryant's conduct has caused and continues to cause substantial harm to the Government by fraudulently reducing her customer's reported tax liabilities, claiming tax credits to which they are not legally entitled, obtaining fraudulent refunds, and forcing the IRS to examine her customer's tax returns and attempt to collect the resulting deficiencies from her customers.

106. The magnitude of the lost tax revenue caused by Bryant's conduct is substantial and likely far exceeds the $808,111 that the IRS has determined to date through examining tax returns Bryant prepared.

107. If the Court does not enjoin Bryant, she is likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701. Bryant's preparation of returns claiming improper refundable credits and improper deductions in order to reduce her customers' tax liability is widespread over many customers and tax years. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

**COUNT THREE**
**Injunction under 26 U.S.C. § 7402(a)**

108. The United States hereby incorporates by reference the allegations in paragraphs 1 through 107.

109. Section 7402 of the Internal Revenue Code authorizes a district court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

110. Bryant, through the actions described above, has engaged in conduct that substantially interferes with the enforcement of the internal revenue laws. Her preparation and filing of numerous fraudulent tax returns resulted in customers not paying their true federal tax liabilities and receiving tax refunds to which they were not entitled.

111. An injunction prohibiting Bryant from preparing or assisting in the preparation of tax returns is needed to stop her from preparing or filing fraudulent tax returns and to prohibit her from otherwise interfering with the proper administration and enforcement of the internal revenue laws.

112. Given the continual, repeated, broad and brazen nature of Bryant's misconduct, unless enjoined by this Court, Bryant is likely to continue to engage in illegal conduct in the future.

113. Unless enjoined, Bryant is likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws. If Bryant is not enjoined from engaging in fraudulent and deceptive conduct, the United States will suffer irreparable harm from the underpayment of taxes, by providing federal income tax refunds to individuals not

entitled to receive them, through the exhaustion of resources to enforce the internal revenue laws, and by an undermining of the public's confidence in the administration of the nation's tax system.

114. While the United States will suffer substantial, irreplaceable injury if Bryant is not enjoined, Bryant will not be harmed by being compelled to obey the law.

115. Enjoining Bryant is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Bryant's illegal conduct and the harm it causes the United States and Bryant's customers who are examined by the IRS and ultimately owe additional taxes, penalties, and interest.

116. An injunction under 26 U.S.C. § 7402 is necessary and appropriate, and the United States is entitled to injunctive relief under § 7402. The injunction, as detailed below, should bar Bryant, and anyone acting in concert with her, from preparing or filing tax returns for others, representing customers before the IRS, and from otherwise engaging in conduct that interferes with the proper administration of the internal revenue laws.

**WHEREFORE**, the United States of America prays for the following:

A. That the Court find that Tiga Bryant has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, and has continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B. That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting Tiga Bryant, individually and doing business as Denson's Fast Tax Service, from acting as a federal tax return preparer;

C. That the Court find that Tiga Bryant has engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D. That the Court find that Tiga Bryant has engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

E. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407 and 7408, enter a permanent injunction prohibiting Tiga Bryant, and all those in active concert or participation with her, from:

1) acting as a federal tax return preparer or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than herself;
2) preparing or assisting in preparing federal tax returns that she knows, or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;
3) owning, operating, managing, working for, profiting from, volunteering for, or controlling a tax return preparation business;
4) engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code;
5) appearing as a representative on behalf of any person or entity before the IRS;
6) seeking permission or authorization (or helping or soliciting others to seek permission or authorization) to file tax returns with an IRS Preparer Tax Identification Number

("PTIN") and/or IRS Electronic Filing Identification Number ("EFIN"), or any other IRS service or program by which one prepares or files tax returns; and

7) using, maintaining, renewing, obtaining, transferring, selling, or assigning any PTIN(s) and EFIN(s).

F. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407 and 7408, enter an order requiring Tiga Bryant to contact, within fifteen days of the Court's order, by United States mail and, if an e-mail address is known, by e-mail, all persons for whom she has prepared federal tax returns or claims for refund for tax years 2008 through 2016 to inform them of the permanent injunction entered against her;

G. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407 and 7408, enter an order requiring Tiga Bryant to produce to counsel for the United States, within fifteen days of the Court's order, a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) all persons for whom she prepared federal tax returns or claims for a refund for tax years 2008 through 2016;

H. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407 and 7408, enter an injunction requiring Tiga Bryant to provide a copy of the Court's order to all of Bryant's principals, officers, managers, employees, and independent contractors within fifteen days of the Court's order, and provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person whom Bryant provided a copy of the Court's order;

I. That the Court retain jurisdiction over Tiga Bryant and over this action to enforce any permanent injunction entered against her;

J. That the United States be entitled to conduct discovery to monitor Tiga Bryant's compliance with the terms of any permanent injunction entered against her; and

K. That the Court grant the United States such other and further relief, including costs, as is just and reasonable.

DATED: February 8, 2017

Respectfully submitted,

KENNETH A. POLITE, JR.
United States Attorney

DAVID HUBBERT
Acting Assistant Attorney General

s/ Christopher R. Moran
CHRISTOPHER R. MORAN
New York Bar# 5033832
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 7238
Washington, D.C. 20044
202-307-0834 (v)
202-514-6770 (f)
christopher.r.moran@usdoj.gov
Attorneys for United States of America